# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS
# EAST ST. LOUIS DIVISION

| | |
|---|---|
| **JESSICA CASEY, et al.,** | ) |
| *Plaintiffs,* | ) ) ) |
| v. | ) CASE NO: 3:17-cv-00521 |
| **ROGER DENTON, et al.,** | ) ) ) |
| *Defendants.* | ) ) ) |

## ORDER ON MOTION TO REMAND

### I. INTRODUCTION

On May 16, 2017, the defendants Michael S. Burg ("Burg") and Burg, Simpson, Eldredge, Hersh & Jardine, P.C. ("Burg Simpson") removed this action to the United States District Court for the Southern District of Illinois from the Twentieth Judicial Circuit, St. Clair County, Illinois. *See Casey v. Denton*, Case No. 2017 L 250 (Cir.Ct.St.ClarCty, IL). The original action was filed as a putative class action for one count of legal malpractice by plaintiffs Jessica Casey, Melody Edwards, and Debbie Foster ("plaintiffs") against numerous defendants stemming from actions involving the multidistrict litigation, *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL 2100, No. 3:09-md-02100-DRH-CJP ("MDL" or "Yaz MDL"). Among the defendants are Lead and/or Liaison counsel (and their respective law firms) appointed by this Court to help aid in the efficient running of the MDL (Roger Denton as Liaison Counsel, and Michael S. Burg, Michael A. London, and Mark R.

Niemeyer as Co-Lead Counsel) and plaintiffs' individually retained attorneys in the underlying action (Daniel P. Massey, David M. Peterson, and Gregory McEwen, respectively) and their individual law firms. The Yaz MDL consolidated personal injury lawsuits relating to various plaintiffs' use of Bayer Corporation-manufactured oral birth control, including YAZ, Yasmin, and the generic equivalent, Gianvi. According to the MDL plaintiffs, these contraceptives caused their varying injuries as a result of thrombotic events triggered by the components used to make the drugs.

In their Complaint, plaintiffs allege claims of legal malpractice under Illinois common law that concern the duties imposed on Lead and/or Liaison counsel in a federal multi-district litigation. Specifically, plaintiffs bring suit due to the purported failure of the Lead/Liaison counsel and individually retained counsel to respond to a December 17, 2015 motion to dismiss ("MTD") filed by Bayer, which led to plaintiffs' and the putative class' dismissals with prejudice. *See* Case Management Order No. 79 ("CMO 79"), 3:09-md-02100-DRH-CJP, D.E. 3789 and Order Granting with Prejudice Dismissal Pursuant to CMO 79, at *e.g.,  Casey v. Bayer Healthcare Pharmaceuticals, Inc. et al.*, 3:14-cv-10387-DRH-PMF, D.E. 7 (which will both be explored in more detail below). According to plaintiffs, Lead/Liaison counsel held duties of trust, confidence, and loyalty to the putative class members, and that those duties were breached by failing to respond to the MTD. Compl. ¶¶ 57, 69-75. Consequently, the putative class is defined as follows:

> "All individuals who were prescribed, obtained and consumed Bayer-manufactured Yaz and/or its generic, Bayer-manufactured counterparts from January 1, 1999 up to and including the present and whose cases against Bayer were dismissed with prejudice in the U.S. District Court by its order of January 7, 2016 (docketed January 11, 2016) for failure to comply with that Court's standing Case Management Order No. 79 . . ."

Compl. ¶ 26.

Defendants Burg and Burg Simpson removed this action under 28 USC § 1331, arguing that this Court has original jurisdiction because it is a "civil action arising under the Constitution, laws, or treaties of the United States." *Id.* These defendants claim that plaintiffs' allegations "call on the Court to reach determinations regarding the nature of, and the extent of, the duties of lead and liaison counsel in federal multidistrict litigation, appointed by a federal court, pursuant to federal statute" and that the suit will require "interpretation of how those duties were exercised pursuant to orders of this Court." Notice of Removal, D.E. 1, ¶ 7. The Burg defendants also allege the Court has supplemental jurisdiction over the malpractice claims against the individually retained attorneys pursuant to 28 U.S.C. § 1367(a).

Plaintiffs object to the removal and moved to remand the action on June 9, 2017. Plaintiffs argue that the Class Action Fairness Act ("CAFA") governs here and that removal was improper because the "mass action filed by the Plaintiffs . . . fails to meet jurisdictional requirements of more than 100 Plaintiffs as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)." Motion to Remand, D.E. 18, p. 2. The Court does not find plaintiffs' arguments regarding

CAFA persuasive, and for the following reasons, **denies plaintiffs' motion to remand.**

## II. STANDARD

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). A case cannot remain in federal court if the court cannot properly exercise subject matter jurisdiction over the suit in question. Here, the statutes in question that create federal jurisdiction are 28 U.S.C. § 1331, original or "arising under" jurisdiction, and 28 U.S.C. § 1332(d), jurisdiction arising under CAFA. Original jurisdiction, which defendants promote, may be found in two ways. One, in all civil actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, meaning that a federal law created the cause of action presented in a complaint. *See e.g. Rutledge v. Wal-Mart Stores, Inc.*, No. 06-4065 DRH, 2007 WL 685939, at *1 (S.D. Ill. Mar. 6, 2007) (Herndon, J). Or two, when federal law does not actually create the cause of action presented in a complaint, "a court must carefully consider whether the federal issue presented is nonetheless substantial and not 'collateral, peripheral or remote.'" *Id*. at *2, quoting Merrel Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 807 (1986). Under this latter option, federal jurisdiction over a state law claim will lie "if a federal issue is: 1. Necessarily raised; 2. Actually disputed; 3. Substantial; and 4. Capable of resolution in federal court without disrupting the federal-state court balance approved by Congress." *Gunn*, 133 S. Ct. at 1065.

Under plaintiffs' theory of removal, CAFA is the only mechanism to remove class or mass actions. Per the requirements of 28 U.S.C. § 1332(d)(2), the parties must have minimal diversity and the claims must exceed the sum or value of $5,000,000. And, as plaintiffs highlight, per 28 U.S.C. § 1332(d)(11)(B)(i), a mass action must contain the claims of 100 or more persons. Plaintiffs argue then, that "the unavoidable defect in Burg's theory of removal based upon CAFA jurisdiction in this case is that the case contains only forty-four (44) Plaintiffs, well short of the 100 plaintiffs required for the exercise of jurisdiction over questions of fact and law in a mass action." Motion to Remand, D.E. 18, p. 8.

Plaintiffs miss the mark arguing CAFA jurisdiction, as the Notice of Removal filed by defendants does not even mention this statute. Section 1331, original jurisdiction, and section 1332, CAFA jurisdiction, are two alternative bases for removal. The Court agrees with defendants that is not true that "an inability to meet CAFA's prerequisites deprives the Court of jurisdiction for *any* reason[.]" Opp. to Mtn. to Remand, D.E. 44, p. 8. *See e.g.*, *Stell v. Gibco Motor Express, LLC*, No. 3:15-CV-1105-DRH-DGW, 2016 WL 2620178, at *2 (S.D. Ill. May 9, 2016) (Herndon, J), ("[T]he Court cannot conclude that CAFA is now the exclusive means for establishing subject matter jurisdiction over class actions"), and *Blevins v. Aksut*, 849 F.3d 1016, 1020 (11th Cir. 2017), ("Thus, when the requirements of federal-question jurisdiction are met, district courts may exercise jurisdiction over class actions[.]")

Because alternative bases for removal exist, plaintiffs are wrong to argue solely CAFA jurisdiction and ignore defendants' stated basis for removal, federal question jurisdiction. *See Schillinger v. Union Pac. Corp.*, No. 05-CV-0437-MJR, 2005 WL 6111635, at *1 (S.D. Ill. July 25, 2005) (Reagan, J) (implicitly confirming that multiple paths exist to removal by Court's review of notice of removal containing alternate methods of removal and rejecting federal question jurisdiction for reasons other than that class actions must fall under the purview of CAFA). Thus, the Court will proceed to analyze the Burg defendants' stated basis for removal, original jurisdiction.

### III. ANALYSIS

As stated above, when the cause of action does not directly arise from federal law, a court must carefully consider whether the state law claims "implicate significant federal issues" for federal jurisdiction to lie. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). To be significant, the federal issue must be essential to the plaintiffs' cause of action, *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002), and more importantly, be significant "to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. Thus, federal jurisdiction is proper over a state law claim only when the federal issue is: 1. Necessarily raised; 2. Actually disputed; 3. Substantial; and 4. Capable of resolution in federal court without disrupting the federal-state court balance approved by Congress." *Id*. at 1065. The Court will analyze each element in turn.

   **a. The Claims Presented by Plaintiffs Necessarily Raise a Federal Issue**

Here, plaintiffs allege claims of legal malpractice under Illinois common law against the Lead/Liaison counsel appointed in the Yaz MDL and against their individually retained attorneys hired to represent plaintiffs in the MDL. Some further background is needed to fully understand the crux of plaintiffs' complaints.

The Yaz MDL, underlying the present lawsuit, consolidated over 10,000 personal injury claims related to the taking of Bayer-manufactured oral contraceptives containing drospirenone. Those claims were centralized to the United States District Court for the Southern District of Illinois in October 2009. To aid in the handling and efficiency of this massive litigation, the Court issued Order No. 2, which appointed plaintiff leadership positions. *See* Order No. 2, 3:09-md-02100-DRH-CJP, D.E. 180. Among these positions and at the heart of this matter, three attorneys were named Co-Lead Counsel, Mr. Burg, Mr. London, and Mr. Niemeyer. *Id*. at 1. Additionally, Mr. Denton was appointed as Liaison Counsel. *Id*. The function of the Lead/Liaison counsel was to help delegate responsibilities and to aid in streamlining work product. Lead/Liaison counsel was tasked with numerous duties to progress the MDL, the key one here regarding motion practice. Under the "Miscellaneous" heading of Order No. 2, the Court ordered that Lead/Liaison counsel "oppose when necessary any motions submitted by defendants or other parties which involve matters within the sphere of the responsibilities of [Lead\Liaison counsel]." *Id*. at 5. Examples of the discrete responsibilities given to Lead/Liaison counsel include such tasks as

serving as "the recipient for all Court orders on behalf of all of the plaintiffs," to "coordinate the establishment of a document depository," and "to prepare agendas for court conferences[.]" *Id*. at 2-3.

The responsibilities and duties assigned to the Lead/Liaison counsel are important due to plaintiffs' factual allegations claiming legal malpractice. Namely, that Lead/Liaison counsel breached the duties imposed on them by this Court when they failed to respond to a motion to dismiss filed by Bayer for certain plaintiffs' failure to comply with CMO 79. Per plaintiffs' complaint, each individual defendant, "owed a duty to the Plaintiffs . . . to file a responsive pleading to Bayer's motion to dismiss[.]" Compl. at ¶ 79. The Court agrees with defendants that, whether Lead/Liaison counsel owed plaintiffs a duty turns on a federal question essential to the resolution of plaintiffs' claims - that question being, in an MDL context created under federal statute 28 U.S.C. § 1407, what is the fiduciary relationship or the attorney/client relationship, between MDL leadership and the individual plaintiffs within the litigation? Put another way, in a federal MDL, what duties do leadership counsel owe individual plaintiffs?

Not only does the determination of MDL leadership counsel's duties require the Court to resolve an issue of federal law to adjudicate the present plaintiffs' legal malpractice claims, but the Court's resolution of this issue necessarily implicates the federal system as a whole. (*See* Sec. III(c) *infra).* Thus, plaintiffs' claims necessarily raise a federal issue.

**b. The federal issue is actually disputed**

The Court will not go into great detail addressing element (b) as whether Lead/Liaison counsel owed duties to the individual plaintiffs to respond to Bayer's MTD is at the crux of the legal malpractice claims, and therefore, actually disputed.

**c. The federal issue implicated by plaintiffs' claims is substantial**

The federal issue of what comprises the fiduciary relationship between Lead/Liaison counsel and the individual plaintiffs in the underlying litigation is the predominate issue of this case. What's more, this issue is of substantial importance "to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. A national uniform decision on the make-up of the questioned relationship is advantageous to the entire federal system as the answer to that question will set precedent "once and for all" and can thereafter govern numerous multi-district litigation cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006).

The matter of what fiduciary duties MDL leadership counsel owes the individual plaintiffs in the multi-district litigation is a substantial federal issue prevailing over the case at hand. Without going into weighty detail, the Court agrees with defendants that the implications of plaintiffs' allegations can have far-reaching effects on the tools federal courts have to manage complex litigation. For example, rulings on the interplay between Lead/Liaison counsel's responsibilities towards individual plaintiff members and the responsibilities of individual attorneys retained to represent each individual plaintiff, presents an important

distinction and concept ripe to set the path for future litigation. Therefore, the allegations made by plaintiffs present a substantial federal issue, significant to the federal system as a whole, one that will benefit from "the experience, solicitude, and hope of uniformity that" the federal forum offers. *Grable & Sons Metal Prods., Inc.,* 545 U.S. at 212.

The federal issue of what duties are bestowed on MDL leadership counsel in relation to individual plaintiffs is distinguishable from the issue analyzed in *Gunn,* relied on by plaintiffs in support of their motion to remand. *See generally,* Reply Memorandum, D.E. 45. In *Gunn*, the U.S. Supreme Court held that plaintiff's legal malpractice claim did not arise under federal patent law. 133 S. Ct. at 1065. Plaintiffs run with that statement and claim that the *Gunn* decision stands for the proposition that no malpractice claim can create a substantial federal issue, D.E. 45 at p. 3, because malpractice claims will never portend any "forward-looking" consequences that can affect outside or future litigation. A review of *Gunn* however, reveals that the Supreme Court was analyzing only those legal malpractice claims stemming from patent law. The Court made no sweeping statement about malpractice claims launched from other areas of law.

In *Gunn*, the Supreme Court explained that the disputed patent issues were "unlikely to have the sort of significance for the federal system necessary to establish jurisdiction." 133 S. Ct. at 1065. For the reasons explained above and below, that is not true for the MDL leadership fiduciary question presented to this Court. Here, addressing the fiduciary relationship between the litigants does not

just solve the interests of the parties themselves, but has a much broader significance on the federal system, as resolution of the issue will impact future cases born from 28 US.C. § 1407. *See e.g. Bender v. Jordan*, 625 F.3d 1128, 1130 (D.C. Cir. 2010). The federal issue is not one that is bound by case specific facts, where resolution will have no bearing on solving the malpractice claims. Instead, the Court's ruling on the federal issue of the duties held by Lead/Liaison counsel will certainly have "forward-looking" consequences extended beyond the current litigation and applicable to future MDL cases. *Gunn.* 133 S. Ct. at 1068. Hence, this case is distinguishable from *Gunn*.

Finally, the question of what fiduciary duties plaintiff leadership counsel owes to individual plaintiffs has been rarely litigated, if at all. (The closest case this Court found on the present issue is *Mitchell v. Smalley*, No. 4:12-CV-00300-HLM, 2014 WL 1248002 (N.D. Ga. Feb. 6, 2014) (Murphy, J). There, plaintiffs brought legal malpractice claims against *defendant* leadership counsel of an MDL, thus making it immediately distinguishable. Ergo, the *Smalley* case provides minimal assistance but even so, reviewing the case finds that a Georgia federal court found no instance of malpractice by MDL leadership counsel due in part to plaintiffs' failure to follow the Standing Order. *Id.* at \*6.) Clear guidance from the federal courts is of obvious value here, to create consistent precedent moving forward in an area of law not fully fleshed out by case law.

### d. Federal jurisdiction over this cause of action would not disrupt the federal-state court balance

As discussed above, this case appears to be one of first impression. Accepting jurisdiction will therefore upset few, if any, pending state court cases. Plus, state courts, such as Illinois, do not have any interest in how federal courts organize and manage multi-district litigations, including duties bestowed on any agents of the MDL. Thus, this factor also leans in favor of accepting jurisdiction.

   e. **Supplemental Jurisdiction**

Because the Court has original jurisdiction over the claims against Lead/Liaison counsel, it may also exercise supplemental jurisdiction over certain claims arising from the same case or controversy. This power comes from 28 U.S.C. § 13679(a) which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" Here, the malpractice allegations against both sets of defendants stem from the same underlying controversy – the dismissal of the plaintiffs from the Yaz MDL due to a failure to respond to Bayer's motion to dismiss. Thus, all malpractice claims asserted by plaintiffs are properly before this federal forum.

## IV. CONCLUSION

This Court therefore finds that original jurisdiction exists over the federal question of what fiduciary relationship exists between MDL leadership counsel and individual plaintiffs in the MDL lawsuit. That federal issue is necessarily raised by the complaint, actually disputed by the parties, substantial to the

lawsuit, is capable of resolution in federal court without disrupting the federal-state court balance approved by Congress. Because federal question jurisdiction is found, supplemental jurisdiction is also proper over the malpractice claims against the plaintiffs' individually retained attorneys due to the allegations arising from the same case or controversy. **Thus, the motion to remand is denied.**

It is so **ORDERED**.
Dated this 11th day of August, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.08.11 15:34:08 -05'00'

UNITED STATES DISTRICT JUDGE