# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JESSICA CASEY, et al.,**

    *Plaintiffs,*

    v.

**ROGER DENTON, et al.,**

    *Defendants.*

CASE NO: 3:17-cv-00521

## MEMORANDUM & ORDER

**Herndon, District Judge:**

Before the Court, is Lead and Liaison Counsel Defendants' Rule 12(c) Motion for Judgment on the Pleadings (doc. 81). Lead and Liaison Counsel seek that plaintiffs' amended class action complaint be dismissed with prejudice for failing to state a legally cognizable breach of fiduciary duty claim. Plaintiffs oppose the motion (docs. 89; 90) and additionally include in their response, a motion for partial summary judgment, seeking the Court find as a matter of law that the Lead and Liaison Counsel defendants were acting as fiduciaries to the named plaintiffs during their time as putative class members of the *Yaz* MDL.

After careful consideration of the issues as argued by the parties and as evaluated in the pleadings, the Court determines that Lead and Liaison Counsel did not breach any fiduciary duty owed to the named plaintiffs and the putative class they represent. For the following reasons, the Court **GRANTS** Lead and Liaison Counsel defendants' motion for judgment on the pleadings (doc. 81) and

1

**DENIES** plaintiffs' motion for partial summary judgment included in their responses to defendants' motion (docs 89; 90). Lead and Liaison Counsel are **DISMISSED WITH PREJUDICE** from the amended complaint.

## I. INTRODUCTION

The Multidistrict Litigation Act of 1968 establishes authority for the creation of an MDL – transfers of civil actions pending in differed federal courts to a single district (transferee court) for consolidated pretrial proceedings. Once the transferee court is selected, the transferee judge assumes control over all current and future cases involving the common questions and common defendants involved in the litigation. The enabling act does not authorize that judge to unitlaterally call up for trial any cases on that docket. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 118 S. Ct. 956, 964-65(1998). The purpose of an MDL is multifold and includes avoidance of repetitive discovery compliance, elimination of inconsistent pretrial rulings, and conservation of resources of both the judiciary and the litigants.[1]

Because of the large number of suits involved in an MDL, the presiding Judge will often designate "management" roles to help maintain the docket. These leadership-type roles may include, and are not limited to, special masters, issue committees, and lead and/or liaison counsel whose job it is to serve as representatives over the common interests of the plaintiffs and of defendants as defined and materialized by court order. *See* Fed. Judicial Ctr., Manual for

---

[1] Neil B. Nicholson, "Federal Practice and Bankruptcy: Multi-District Case Consolidation Has Pros and Cons" https://www.nhbar.org/publications/display-news-issue.asp?id=6942 (July 19, 2013).

Complex Litigation § 10.222 (4th ed. 2004) ("The functions of lead [and] liaison [counsel] . . . should be stated in either a court order or a separate document drafted by counsel for judicial review and approval"). These common management positions benefit the running of an MDL by keeping the litigation organized and efficient.

Here, plaintiffs Jessica Casey, Melody Edwards, and Debbie Foster ("plaintiffs") bring their amended class action complaint (doc. 74) for reasons stemming from the multidistrict litigation centralized in this Court, *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL 2100, No. 3:09-md-02100-DRH-CJP ("MDL" or "*Yaz* MDL"). The *Yaz* MDL consolidated personal injury lawsuits relating to various plaintiffs' use of Bayer Corporation-manufactured oral birth control, including YAZ, Yasmin, and the generic equivalent, Gianvi. More than 11,000 suits were consolidated into the *Yaz* MDL. According to *Yaz* MDL plaintiffs, the contraceptives caused their varying injuries as a result of thrombotic events triggered by the components used to make the drugs.

To help manage the *Yaz* MDL, the undersigned appointed a Plaintiffs' Steering Committee ("PSC") on November 11, 2009. *See* doc. 180, Order No. 2[2] (included at doc. 74, Am. Compl. Ex. 2). The purpose of the PSC, established in Order No. 2, was to grant certain responsibilities to a select number of attorneys chosen to represent the common interests of all plaintiffs in the MDL. Examples

---

[2] Unless otherwise stated, all references to document numbers relate to the ECF entries in the *Yaz* MDL master docket, no. 3:09-md-02100-DRH-CJP.

3

of these responsibilities include: pursuing common offensive strategies, coordinating generic discovery responses against the Bayer defendants, and relaying important case developments to the chosen, retained counsel for all the individual plaintiffs. *See* doc. 180, *included* at doc. 74, Am. Compl. Ex. 2; Am. Compl. ¶¶ 58-62. Fourteen lawyers were appointed to and comprised the PSC. Of those fourteen, the Court designated two sub-groups: Co-Lead Counsel ("Lead Counsel") and Liaison Counsel (together, the "Lead and Liaison Counsel" or the "Lead and Liaison Counsel Defendants"). Specifically, defendants Michael Burg, Michel London, and Mark Niemeyer were selected as Lead counsel. Defendant Roger Denton was appointed as Liaison Counsel.

After years of litigation, the parties successfully negotiated resolution of a great many of *Yaz* MDL cases.[3] Because of this negotiation, on August 3, 2015, the Court entered Case Management Order ("CMO") No. 79, entitled "Non-ATE Case Resolution CMO," which placed the remaining, unresolved, cases on separate litigation tracks and ordered certain plaintiffs to comply with various deadlines and provide specified documents to Bayer and to healthcare providers. Doc. 3789; *included* at doc. 74, Am. Compl. Ex. 3. Notably, CMO No. 79 did not place any responsibilities on the Lead or Liaison Counsel Defendants with regards to the deadlines and document submissions.

On December 17, 2015, Bayer moved to dismiss 44 individual plaintiffs for failure to comply with CMO No. 79. The named plaintiffs bringing this action

---

[3] The settlement was a "global settlement" i.e. all cases within a certain category of injury. In greater numbers, other settlements were reached via inventory settlements through negotiations on a case-by-case, law firm by law firm basis, but are not the subject of this litigation.

4

were included in the forty-four individuals Bayer sought to dismiss. Bayer's motions seeking dismissal were filed in each delinquent plaintiffs' personal case file, not in the *Yaz* MDL master docket. *See e.g.* case no. 3:12-cv-11370-DRH-PMF, doc. 25. Plaintiffs allege that neither their retained counsel, nor Lead and Liaison Counsel, responded to the motions to dismiss and accordingly, the Court dismissed plaintiffs' claims with prejudice on January 11, 2016. *See e.g. id.* at doc. 26. No motions to reconsider, to alter judgment, or to appeal were filed after the Clerk's judgments entering dismissals. Instead, plaintiffs filed a state court action over one year later on May 8, 2017. The action was removed to this Court on May 16, 2017.

### a. Complaint and Allegations of Breach of Fiduciary Duty

In their Complaint, plaintiffs allege that Lead and Liaison Counsel breached purported fiduciary duties by failing to address (or failing to delegate) the directives laid out in CMO No. 79. With regards to the Lead and Liaison Counsel Defendants, plaintiffs specifically allege that fiduciary duties were breached by failing to determine plaintiffs' statuses and obtaining their medical records and completing their Fact Sheets in accordance with CMO No. 79; failing to submit certificates of compliance for plaintiffs as determined in CMO No. 79; failing to provide case-specific expert reports as required by CMO No. 79; and to the crux of this dispute, failing to respond to Bayer's motions to dismiss each plaintiffs' individual case. *See* Am. Compl. at ¶¶ 110-118; 121-122.

In claiming that Lead and Liaison Counsel owed fiduciary duties to the plaintiffs and purported class members to "obey" and "comply" with CMO No. 79 (*id*. at ¶ 121), plaintiffs analogize the duties and responsibilities of mass tort lawyers and lawyers who represent classes of plaintiffs. *See* doc. 90 at 11. The analogy is necessary as plaintiffs point out there is no direct case law on point with regard to what lead and liaison counsel's duties are in the MDL context: "Although there is no case law on point with regard to MDLs, it logically follows that Lead/Liaison Attorneys are fiduciaries to the putative class members." *Id*. Plaintiffs argue that Lead and Liaison Counsel Defendants' duties arose from and were created by this Court's orders, specifically Order No. 2. Having these duties bestowed upon them and then failing to act as alleged above, plaintiffs aver Lead and Liaison Counsel failed to act in the best interests of the class as a whole. *Id. citing* Fed.R.Civ.P. 23(g)(2)(A) advisory committee note).

Accordingly, in addition to asking the Court to deny the Lead and Liaison Counsel Defendants' Motion for Judgment on the Pleadings, plaintiffs also seek the Court to find as a matter of law, that the specified defendants in their roles as leadership counsel, were acting as fiduciaries to the named plaintiffs and the *Yaz* MDL putative members. *Id*. at 19.

**b. Lead and Liaison Counsel's Motion for Judgment on the Pleadings**

Lead and Liaison Counsel Defendants argue that plaintiffs' position turns MDL leadership counsel into the "individual attorneys" for all cases comprising an MDL; here, in the *Yaz* MDL, some 11,000 lawsuits. Doc. 81 at 8. Lead and

Liaison Counsel argue this position is not supported by the specific responsibilities and tasks imposed on them by this Court via Order No. 2 and further, that plaintiffs have presented no facts that demonstrate Lead and Liaison Counsel had fiduciary duties relating to plaintiffs' individual cases as no attorney-client relationship existed between the Lead and Liaison Counsel Defendants and plaintiffs. *See id*. at 9-11. Defendants contend finding that plaintiffs' proposed fiduciary duties exist would create an unworkable MDL system, leading to impossible task load burdens on leadership counsel and interference with the efficiency multi-district litigation is meant to establish. *Id*. at 16-18. Accordingly, Lead and Liaison Counsel pray the Court grant their motion for judgment on the pleadings (doc. 81) and dismiss all claims against them alleged in the amended complaint, with prejudice.

## II.     LEGAL STANDARD

The Court must determine whether plaintiffs' amended complaint states a claim to relief that is plausible on its face as a motion for judgment on the pleadings is analyzed under the same standard as that of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). A rule 12(b)(6) motion challenges the sufficiency of the complaint. Thus, to survive, a rule 12(b)(6) motion, and by extension, a motion for judgment on the pleadings, a claim must demonstrate factual content that "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

**COUNT I – BREACH OF FIDUCIARY DUTIES AGAINST LEAD AND LIASION COUNSEL**

### a. Order No. 2

To prevail on a breach of fiduciary duty claim, a plaintiff must prove (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) damages proximately caused by that breach. *Neade v.* Portes, 739 N.E. 2d 496, 502-3 (Ill. 2000). It is well established that a "fiduciary" is a person, having a duty, created by his undertaking, to act primarily for another's benefit in matters connected with such an undertaking. *Terlizzi v. Gustafson (In re Estate of Gustafson)*, 268 Ill. App. 3d 404 (1994); *citing* Black's Law Dictionary 625 (6th ed. 1990). The Court finds the ending of that statement to be the pinnacle instruction on this entire dispute: One can only act in a fiduciary capacity, and thus have a fiduciary duty, to the extent his actions comport within the boundaries set by the agreement initially creating the relationship. Here, that agreement is Order No. 2. Any relationship between plaintiffs and the Lead and Liaison Counsel Defendants is created by that document and is limited to that document. *See* Manual for Complex Litigation, § 10.222, "The functions of lead, liaison, and trial counsel, and of each committee, should be stated in either a court order or a separate document drafted by counsel for judicial review and approval. This document will inform other counsel and parties of **the scope of**

8

***designated counsel's authority and define responsibilities*** within the group." (Emphasis added). Any proposed function and/or responsibility to be imposed on leadership counsel may only emanate from the document giving rise to that group's duties. It so follows, that any fiduciary duties owed any plaintiff also expound from the stated descriptions of responsibilities listed in the document creating leadership counsel.

Here, Order No. 2 very clearly sets out what responsibilities the Lead and Liaison Counsel Defendants owed to plaintiffs and it is clear from the text that Order No. 2 only imposed tasks geared towards facilitating general work product that could be used for the common good of all plaintiffs.[4] Examples of some of these specific duties include: Coordination of a document depository, real or virtual, to be available to all participating plaintiffs' counsel; to prepare agendas for court conferences; conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs; explore, develop and pursue all settlement options pertaining to any claim or portion thereof; maintain adequate files of all pretrial matters. *See* Order No. 2 at 2-5. Clearly, responding to the specific directives of CMO No. 79 on behalf of a small section of individual plaintiffs was never a duty contemplated under Order No. 2. This is made clearer

---

[4] The way Lead and Liaison Counsel were assigned their functions and roles within the *Yaz* MDL by Order No. 2 also quashes any argument regarding a traditional attorney-client relationship between individual plaintiffs and leadership counsel. Individual plaintiffs did not retain lead counsel nor have communications with them regarding how to best prosecute their unique cases. *See e.g. Formento v. Joyce*, 522 N.E.2d 312, 316 (Ill. 1988). To the contrary, leadership counsel's tasks and duties were created by the Court for the common good of all plaintiffs without any input from individual plaintiffs themselves, *e.g.* management of general discovery; coordinated procedures to minimize expense to litigants, etc.

9

even further, by the plaintiffs CMO No. 79 applied to being represented by their own individual attorneys and Bayer's Orders to dismiss the same group of plaintiffs being filed in individual dockets.

b. **Function and Purpose of MDL Leadership Counsel**

It is important to highlight the purposes multi-district litigation leadership counsel serves and why finding in any other way than the Court finds now would ultimately unravel the benefits and assistance such lead roles lend. Because of the complexities and sheer amount of information an MDL presents when compiling hundreds or even thousands of individual cases, "traditional procedures in which all papers and documents are served on all attorneys and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily." Manual for Complex Litigation, § 10.22. It is often the case where, to avoid being bogged down and wasteful of judicial resources, a court will need to institute procedures "under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients ***with respect to specified aspects of the litigation.***" *Id*. (emphasis added).

Here, the undersigned selected and appointed Lead and Liaison Counsel specifically to aid in the fair, efficient, and economical running of the *Yaz* MDL; their duties to plaintiffs enumerated in Order No. 2. These specific duties were established with the goal of leadership counsel coordinating general pretrial discovery and related tasks pertinent to all *Yaz* filings and to avoid duplicate

filings from many individually-retained attorneys. *See e.g.* Order No. 2 at 4 (leadership counsel tasked with issuing all motions and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial of *relevant issues found in the pleadings of this litigation.*"); *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust* Litigation, 2006 WL 2038650, *2 (E.D.N.Y. 2006) (recognizing appointment of leadership counsel as "a useful and helpful way to avoid duplication of effort and as a means to streamline what could otherwise be inefficient and unruly proceedings"). It was never the intention or spirit of Order No. 2 to supersede the authority or importance of each plaintiff's individually-retained counsel when it came to specific matters unique to each case.

This is undoubtedly shown via the text of Order No. 2 itself. For example, in directing leadership counsel to be charged with the issuance of all necessary discovery, the Order tellingly states that "similar requests, notices, and subpoenas may be caused to be issued by the [leadership counsel] upon written request by ***the individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims***." *Id.* *See also, id.* (Leadership counsel is to "[a]ct as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any plaintiff's counsel to present non-repetitive individual or different positions.") There can be no confusion based upon the document appointing Lead and Liaison Counsel that leadership attorneys and individually retained

11

attorneys were each to have distinct and separate roles, each necessary to run an efficient MDL. *See In re Cardinal Health, Inc. ERISA Litigation*, 225 F.R.D. 552, 555 (S.D. Ohio 2005) ("Complex litigation often involves numerous parties with similar interests, such that traditional procedures in which all papers are filed with every counsel becomes unduly cumbersome. Courts can effectively help manage such litigation by appointing lead and liaison counsel.")

### c. Limited Fiduciary Relationship between MDL Plaintiffs and Leadership Counsel

It is clear that while the Lead and Liaison Counsel Defendants did have specific duties owed to plaintiffs as a whole in the *Yaz* MDL as listed in Order No. 2, none of those duties encompass the general breadth plaintiffs would like read in to it – that is, having lead counsel held responsible to responding to case-specific case management orders or filing responses to defendants' motions pertinent only to individual cases. However, this is not to say that no fiduciary duties potentially arise between the two groups when counsel fills leadership roles. Indeed, instead of how plaintiffs purport the relationship functions, the fiduciary duties that may be created and owed by leadership counsel in an MDL context include obligations to act fairly, efficiently, and economically in the interests of all parties and parties' counsel. *See* Manual for Complex Litigation, § 10.22. Put differently, lead and liaison counsel do not owe a fiduciary duty to each and every MDL plaintiff in the traditional sense. Rather, lead and liaison counsel should put the common and collective interests of all plaintiffs first while

they carry out their enumerated functions.[5] This is a far cry from making leadership counsel liable to respond to every individual motion and request filed in each singular case.

A good analogy of what leadership counsel owes all plaintiffs in a multi-district litigation comes from the law regarding trustees. Academic scholars who have written in this area have championed that the Principles of the Law of Aggregate Litigation "suggests that lead attorneys resemble trustees more than lawyers or other agents. Their responsibility is to 'pursu[e] the good of all,' which, if need be, they may do by making tradeoffs that are reasonably 'likely to maximize the value of all claims in the group.'" Charles Silver, *The Responsibilities of Lead Lawyers and Judges in Multidistrict Litigations*, 79 Fordham L. Rev. 1985, 1989 (2011). The author of the Fordham Law Review article supports his claim that lead attorneys resemble trustees with several facts, "including the inability of entrustors to select lead attorneys, fire them, or control them, and the absence of market mechanisms that ordinarily encourage agents to perform well." *Id*. n. 23; s*ee also* Stephen J. Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent.* Vol. 64 Number 1 Loyola L. Rev. Spring 2018, p. 9, *quoting* Restatement (Third) of Agency, § 1.01 (Am. Law Inst. 2018) (explaining that a typical fiduciary relationship, the kind plaintiffs advocate for, exists "when one person, a principal,

---

[5] For an academic perspective on the proposed fiduciary relationship between MDL leadership counsel and plaintiffs, see Loyola Law Review: "Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent." Herman, Stephen, J. Vol. 64, Number 1, Spring 2018.

13

manifests assent to another person, the agent, that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act").

It is obvious to this Court that the hallmarks of a traditional fiduciary relationship are absent from the MDL context in that there is no underlying offer and acceptance of power of attorney or agency between appointed leadership counsel and the plaintiffs. "While Lead Counsel clearly has a duty to perform the functions to which they have been appointed in a fair, honest, competent, reasonable, and responsible way, it would be inappropriate to describe their obligations to other plaintiffs as 'fiduciary' in the traditional sense of the word." Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent*, p. 8. Because of the Court's assessment of the limited application of the term "fiduciary" as applicable to leadership counsel in a multi-district litigation, the Court cannot find that Lead and Liaison Counsel Defendants displaced the duties and responsibilities of plaintiffs' individually retained attorneys and can then be held liable for the alleged failures to follow the directives of CMO No. 79. The Court agrees with academics in this area that have postulated regarding the same and opined that "to the extent that each plaintiff has his or her own particular facts, circumstances, and interests (which may be common in some respects, unique in other respects, and in some ways perhaps even divergent or potentially adverse to those of other plaintiffs), it is assumed that such plaintiffs are simultaneously represented and protected by privately

14

retained counsel." *Id*. at p. 7. To find otherwise and hold leadership counsel responsible in the traditional fiduciary sense for the full breadth of responsibilities owed to each and every MDL plaintiff, would be to make such leadership positions unmanageable and unworkable.

### d. Plaintiffs' Interpretation of the Scope of Leadership Counsel Duties Makes Such Positions Unworkable

Order No. 2 imposed duties on leadership counsel common to all *Yaz* MDL plaintiffs and a claim against Lead and Liaison Counsel can only stand if the alleged breach falls within the scope of the purported duty. *See e.g. Brown v. Brown*, 379 N.E.2d 634, 638 (Ill. App. Ct. 1978). Were Order No. 2 to make leadership counsel responsible for all tasks typically created and agreed upon in a standard attorney-client relationship, like, as alleged here, obtaining medical authorizations or records or obtaining case-specific experts for every distinct plaintiff, there would be no need for any of the individually retained attorneys and reading that interpretation into the Court's Order makes little sense. Leadership counsel of a MDL could not fathomably be held responsible for the minute details of hundreds or in this case, thousands, of individual cases. The proposition is unworkable.

The role of leadership counsel in a multi-district litigation is to ensure the expeditious, fair and economical running of a litigation that contains vast and plentiful information and issues. To aid in its progression, leadership counsel oversees that general discovery and work product common to all plaintiffs moves along in a timely – and organized – fashion. This undertaking is large and

consuming as is. Were this Court to hold that MDL leadership counsel also owed each MDL plaintiff a fiduciary duty to oversee every issue, motion, etc. unique to his or her case, the position would render itself unmanageable. No attorney would seek appointment to the position due to the enormous resources that would be necessary to dedicate to the cause – time wise and staff wise. Charging leadership counsel with this nearly endless amount of responsibility would alter the nature and substance of the position, so much so, that the MDL format would cease to allow for the efficient handling of large, coordinated litigation.

For all the preceding reasons, the Court finds that Lead and Liaison Counsel are entitled to judgment on the pleadings as to Count 1 of plaintiffs' amended class action complaint (doc. 74). Plaintiffs have not stated a claim to relief that is plausible on its face and thus, Count 1 is legally insufficient as plaintiffs have not demonstrated the existence of the specific fiduciary duties they allege were breached by leadership counsel.

**COUNT II –** ***RESPONDEAT SUPERIOR*** **CLAIM AGAINST LEAD AND LIAISON COUNSEL DEFENDANTS' RESPECTIVE LAW FIRMS**

Based on the Court's analysis finding no breach of fiduciary duty against the Lead and Liaison Counsel Defendants, the Court also finds, by necessity, that plaintiffs' *respondeat superior* claim fails as it derives from the legally deficient first count. Accordingly, Lead and Liaison Counsel Defendants are also entitled to judgment on the pleadings as to Count 2 of the amended complaint (doc. 74).

### IV. CONCLUSION

Accordingly, the Court **GRANTS** Lead and Liaison Counsel's Rule 12(c) Motion for Judgment on the Pleadings (doc. 81), in its entirety. Additionally, plaintiffs' cross-motion for Summary Judgment contained in its responses in opposition to the motion for judgment on the pleadings (docs. 89; 90) is **DENIED.** Although some fiduciary duties may be me imparted on to leadership counsel in a MDL context, there are none that conform to the general breadth and scope plaintiffs hope to impose in the way they seek the Court to find. Thus, the cross-motion is denied. The Clerk is **directed** to enter judgment in favor of the Lead and Liaison Counsel at the conclusion of the litigation.

**IT IS SO ORDERED.**

Judge Herndon
2018.09.03
13:29:51 -05'00'

**United States District Judge**